■ DAVID YANIV, Individually and as Administrator of the Estate of FREDA YANIV, Deceased, Respondent-Appellant, v ROBERT TAUB et al., Defendants, and NOAH WEG, Respondent, and NOAH WEG, M.D., P. C., Appellant-Respondent. [683 NYS2d 35] —Order, Supreme Court, New York County (Harold Tompkins, J.), entered on or about March 20, 1998, which granted individual defendant Noah Weg, M.D.'s motion for summary judgment, and which granted plaintiff's cross-motion to amend the complaint to add Noah Weg, M.D., P. C. as a party defendant, unanimously modified, on the law, to the extent of denying the motion for summary judgment on behalf of defendant Noah Weg, M.D. and reinstating the complaint against him to the extent that it asserts a cause of action for negligent supervision, and, except as so modified, affirmed, without costs.

The complaint in this action sounds in medical malpractice. However, the pleadings, as supplemented by plaintiff's bill of particulars and supplemental bill of particulars, allege negligence in failing to communicate with the physician treating Freda Yaniv, plaintiff's decedent. Specifically, the amended complaint alleges that the proposed additional defendant—Noah Weg, M.D., P. C., the medical practice operated by defendant Noah Weg, M.D.—was negligent in failing to transmit a radiologist's report to defendant Robert Taub, M.D., the treating physician, at defendant Columbia-Presbyterian Medical Center. There is no dispute that the chest x-rays were taken at Dr. Weg's office and read by Mark J. Goldman, M.D., a radiologist, who prepared a report dated December 14, 1992, addressed to Dr. Taub. The report states, "There is a 3 cm in diameter mass in the left lower lobe. This mass was not seen on the prior examinations. In view of the patient's history of breast carcinoma, the mass must be presumed to be a metastasis." Dr. Taub, however, maintains that he never received the report, and the mass went undisclosed until another x-ray was taken at Dr. Weg's office on June 8, 1993, which was also interpreted by Dr. Goldman. Freda Yaniv died on September 22, 1994 from carcinoma.

The record contains excerpts of the nonparty deposition of Dr. Goldman, in which he states that he was an employee of Noah Weg, M.D., P. C. from July 1992 to December 1994. It is undisputed that Dr. Weg is the sole shareholder of the professional services corporation that bears his name. It is also undisputed that Dr. Weg did not see or interpret the chest x-ray taken in December 1992. The record contains no evi-

dence of any act of malpractice by Dr. Goldman, whose diagnosis seems to have been altogether accurate. Moreover, in the absence of any personal involvement in the interpretation of the chest x-ray, the preparation of the report or the supervision of Dr. Goldman, there is no basis for a malpractice claim against Dr. Weg, even assuming some act of malpractice by Dr. Goldman could be demonstrated (*We're Assocs. Co. v Cohen, Stracher & Bloom,* 65 NY2d 148, 151; *Sawh v Schoen,* 215 AD2d 291, 293). That is not, however, the end of this Court's inquiry.

The failure to communicate significant medical findings to a patient or his treating physician is not malpractice but ordinary negligence (*McKinney v Bellevue Hosp.,* 183 AD2d 563). As sole shareholder and principal of the professional services corporation, Dr. Weg is responsible for the supervision of his staff. Dr. Weg is correct that vicarious liability cannot be the basis of a claim in malpractice because Business Corporation Law § 1505 (a) "preclude[s] the imposition of personal shareholder liability in instances not involving the direct rendition of professional services" (*We're Assocs. Co. v Cohen, Stracher & Bloom, supra,* at 151). However, there is an alternative basis for assigning liability in this action independent of Dr. Weg's status as shareholder.

According to the testimony of Dr. Goldman, the customary office practice for transmitting a radiology report to the referring physician was for a member of the office clerical staff to "take the signed report, xerox them [*sic*], stuff the envelope and take it to the post office at night." Dr. Goldman further testified that his own custom was to "fax, telephone or both to the referring physician", but he conceded that such a telephone conversation would not necessarily be noted in the patient's record. Asked about the mailing of a report to a physician, Dr. Weg testified, "At any given point in time, there are 10 or more staff persons working the front desk. Any one of them would do that."

Under the doctrine of respondeat superior, a corporation, including a professional services corporation, is liable for a tort committed by its employee (*Connell v Hayden,* 83 AD2d 30, 46). However, the doctrine "does not apply to impose vicarious liability upon supervisors" (*supra,* at 50). Dr. Weg is both an employee of the corporation and its executive and sole shareholder. It is clear that, as principal of the corporation, Dr. Weg bears responsibility for supervision of the office staff and for implementation of office policy and procedure. In the capacity of employee and supervisor, Dr. Weg is subject to liability

for the acts of a fellow employee where, under the circumstances, there is " 'an unreasonable risk of physical harm to others * * * resulting from a risk which his direction or permission creates' " (*Connell v Hayden, supra,* at 51, quoting Restatement [Second] of Agency § 351).

To excuse late service on a party sought to be added as a defendant in an action, it is necessary to establish that the claim against the new party relates back to the claim asserted against a defendant timely served with the summons and complaint. The plaintiff is required to demonstrate that both claims arise out of the same conduct, transaction or occurrence (CPLR 203 [f]); that the new party is "united in interest" with a defendant who was timely served (CPLR 203 [b]); and that the omission to name the new party in the original complaint was not an attempt to secure some tactical advantage in the litigation (*Buran v Coupal,* 87 NY2d 173, 181). These criteria have their origin in *Brock v Bua* (83 AD2d 61, 69), which was endorsed by the Court of Appeals in *Mondello v New York Blood Ctr.* (80 NY2d 219, 226). The *Brock* test was subsequently modified to eliminate the need to demonstrate "excusable mistake" in failing to originally serve the additional party. The Court of Appeals reasoned that the requirement " 'shifts the focus away from the primary question of whether the new party had actual notice of the claim' " (*Buran v Coupal, supra,* at 180, quoting *Virelli v Goodson-Todman Enters.,* 142 AD2d 479, 483), noting that the " 'linchpin' " of the relation back doctrine is "notice to the defendant within the applicable limitations period" (*supra,* at 180, citing *Schiavone v Fortune,* 477 US 21, 31).

Applying these criteria to the facts at bar, it is apparent that Supreme Court properly granted leave to add the professional services corporation as an additional party defendant. The act comprising the tort—negligent supervision of the clerical staff by Dr. Weg—is the same transaction for which the professional service corporation is vicariously liable. Therefore, the doctor and the corporation are united in interest with respect to the actionable wrong. Furthermore, because Dr. Weg is the principal of the corporation, his knowledge of the pendency of this action, as well as the conduct or occurrence complained of, is imputed to the corporation he controls (*Brock v Bua, supra,* at 71). Finally, no delay or prejudice results from adding the corporate defendant as a party (*Buran v Coupal, supra,* at 182).

Supreme Court was also correct to deny plaintiffs' application to add Mark J. Goldman, M.D. as an additional defendant. While the doctrine of respondeat superior imposes liability on

a corporation for the torts of its employees, the doctrine imposes no such liability upon the doctor, an employee of the corporation, for a tort committed by a fellow employee (*Connell v Hayden, supra,* at 50, citing *Scher v Kronman,* 70 AD2d 354, 356). Concur—Milonas, J. P., Ellerin, Rubin and Mazzarelli, JJ.