| |
|---|
| **Vasquez v City of New York** |
| 2024 NY Slip Op 31549(U) |
| April 30, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 152841/2014 |
| Judge: Hasa A. Kingo |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     HON. HASA A. KINGO                          PART                05M

*Justice*

------------------------------------------------------------------------X

XAVIER VASQUEZ,

INDEX NO.           152841/2014

Plaintiff,                        MOTION DATE         09/19/2023,
                                                      09/29/2023

- v -                             MOTION SEQ. NO.     002 003

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, MICHAEL RAMA, LAZARO SUAREZ-
VILLAMIL, ADAM LABOY, JOHN ENTENMANN,              **DECISION + ORDER ON**
POLICEOFFICER HERNANDEZ                                   **MOTION**

Defendant.

------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 002) 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 84, 85, 86, 87, 88, 89, 90, 91, 92, 97, 98, 99

were read on this motion to/for                    DISMISS                          .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 77, 78, 79, 80, 81, 82, 83, 93, 94, 95, 96, 100, 101, 102

were read on this motion to/for                    DISMISS                          .

Upon the foregoing documents, defendant the City of New York (the "City") moves for summary judgment and to dismiss plaintiff's claims (Motion Seq. 002) and to dismiss the complaint against the New York City Police Department (the "NYPD") and the individually named defendants (Motion Seq. 003). The motions are joined for the purpose of this decision, and both are granted.

## BACKGROUND

This civil rights action interposes seven causes of action in connection with Plaintiff Xavier Vasquez's ("Plaintiff") arrest on October 27, 2011 for a rape that occurred on January 1, 2011. Prior to the night in question, on September 11, 2010, the victim was raped in her residence by a man who responded to an internet advertisement she placed for escort services (NYSCEF Doc No. 87, Gorman affirmation in opp ¶ 3; NYSCEF Doc No. 69, Rama deposition transcript at 26-27; NYSCEF Doc No. 72 at 40, police records). The man arrived at the victim's apartment late at night, stole her money and laptop, and raped her at gunpoint in a brutal sexual assault (Gorman affirmation in opp ¶ 3). She reported the attack to the police, who collected evidence, including a condom used by the perpetrator (*id.* ¶ 5). The victim was treated at Metropolitan Hospital after the assault and a sexual assault evidence collection kit was completed (Statement of Material Facts ¶ 10). The contents of the evidence collection kit and a sample from the condom were sent to the

[* 1]

Office of the Chief Medical Examiner for analysis ("OCME") (*id*.). The DNA from the condom did not match anyone in the OCME database (*id*. 5).

During the NYPD investigation that followed, the NYPD obtained subscriber information for the cell phone number the perpetrator used to contact the victim (NYSCEF Doc. No. 72 at 54). The cellular provider was unable to provide a date of birth of the phone subscriber or advise how long the number was in service (*id*.). Further investigation revealed that the address provided for the subscriber of the number did not exist (NYSCEF Doc No. 74, Recommendation for Dismissal at 10). Nevertheless, NYPD detectives continued to trace the location of the cell phone number and pursued video surveillance footage from locations where the cell phone was used (NYSCEF Doc No. 72, police records at 80, 130). The detectives observed one man fitting the description of the perpetrator on the surveillance video, but the victim did not identify him in a photo array (*id*. at 80). The man was not Plaintiff (*id*. at 88).

On or about January 1, 2011, Plaintiff and his wife (then fiancée) wanted to engage an escort and answered an online advertisement that the victim placed online for escort services (NYSCEF Doc No. 63, Statement of Material Facts ¶ 5; NYSCEF Doc No. 91, Response to Statement of Material Facts ¶ 5). Plaintiff and his wife then went to the victim's home to meet her (Response to Statement of Material Facts ¶ 6). Plaintiff testified at a deposition that he and his wife stayed at the victim's residence for about five minutes, during which time they flirted and the three of them kissed (NYSCEF Doc No. 68, Plaintiff's deposition at 60-62). After approximately five minutes, he and his wife left at his wife's request, and they had no further contact with the victim (*id*. at 61-62, 65).

Later the same evening, the victim received a call from a man interested in her escort services (Statement of Material Facts ¶ 7). The man later came to her residence (*id*.). Shortly after the man arrived, the victim realized it was the same man that had raped her on September 11, 2010 (NYSCEF Doc No. 69, Rama deposition transcript at 31; NYSCEF Doc No. 72 at 90). The man again raped her at gunpoint in a second assault (*id*.). During the attack, the victim recovered one of the perpetrator's pubic hairs, which she gave to defendant Detective Michael Rama ("Detective Rama") after the assault (NYSCEF Doc No. 69, Rama deposition transcript at 32; NYSCEF Doc No. 72 at 102). The victim reported the assault to the NYPD, who again collected evidence and investigated the crime. A police report taken after the assault indicates that she described the perpetrator as a Hispanic male in his late 20s or early 30s between 5'8" and 5'10" wearing a tan or brown jacket, grey beanie, and of a slender build (NYSCEF Doc No. 72 at 103). The report also indicates that the victim told the police that the perpetrator had kissed her on the neck during the assault (NYSCEF Doc No. 72 at 83; Statement of Material Facts ¶ 9), and that she had been with her family and did not have contact with any other men for a week prior to the assault (NYSCEF Doc No. 72 at 83, 103). After the second assault, the victim was again treated at Metropolitan Hospital and a sexual assault evidence collection kit was completed, which was submitted to the OCME for analysis (Statement of Material Facts ¶ 10). The kit completed after the second attack included a swab of the victim's neck (*id*. ¶ 11). The OCME found DNA from at least two people on the victim's neck, including "one male and another person" (NYSCEF Doc No. 72 at 192). One of these profiles matched Plaintiff's DNA profile (Statement of Material Facts ¶ 12).

After the assault, NYPD detectives again traced the cell phone that the perpetrator used to contact the victim (NYSCEF Doc No. 69 at 86-97, Rama deposition transcript; NYSCEF Doc No. 72 at 54). Call records for the phone number indicate it was used to call several adult entertainment services, and was associated with a subscriber with the initials "M.S." (NYSCEF Doc No. 72 at 54, 56). NYPD detectives also pursued video surveillance footage from the areas where the cell phone was used, but were unable to obtain clear video footage (NYSCEF Doc No. 69 at 88, Rama deposition transcript; NYSCEF Doc No. 72 at 130).

On October 27, 2011, NYPD officers visited Plaintiff at his home and subsequently interviewed him at a police station. Upon meeting the officers, Plaintiff initially gave a fake name (Response to Statement of Material Facts ¶ 14) and signed a Miranda Warning with the name "Chris Perez" (NYSCEF Doc No. 116). Plaintiff later told the officers his real name (Response to Statement of Material Facts ¶ 14). At the precinct, Plaintiff was shown a photograph of the victim, and he denied knowing or recognizing her (Statement of Material Facts ¶ 16; Response to Statement of Material Facts ¶ 16). Plaintiff was arrested for the rape after the interview (Statement of Material Facts ¶ 1). He was arraigned the next day and charged with rape in the first degree, robbery in the first degree, and criminal sexual act in the first degree (id. ¶ 18). At the arraignment, the Assistant District Attorney (the "ADA") advised the court that, while the victim identified a different individual as the perpetrator in a lineup, the DNA evidence obtained from the victim's neck matched Plaintiff's DNA (id. ¶ 19). On November 2, 2011, Plaintiff was indicted and charged with one count of rape in the first degree, two counts of criminal sexual act in the first degree, one count of sexual abuse in the first degree, and one count of robbery in the first degree (id. ¶ 21). Plaintiff remained incarcerated until December 31, 2012, when he was released after the DNA results from the hair did not match his DNA (Gorman affirmation in opp ¶ 32). On April 11, 2013, the ADA moved to dismiss the charges against Plaintiff based on the results of the DNA testing on the hair obtained by the victim and the victim's inconsistent statement about where it was recovered, among other reasons (Statement of Material Facts ¶ 22).

Plaintiff filed a notice of claim on April 25, 2013, and commenced this action on March 26, 2014 by electronically filing the Summons and Complaint. The complaint asserts seven causes of action, ostensibly for (1) deprivation of substantive due process rights, including deprivation of liberty, (2) federal false arrest and imprisonment, (3) civil rights violations pursuant to 42 U.S.C. § 1983, (4) state false arrest and imprisonment, (5) respondent superior, (6) failure to train, and (7) failure to supervise. The City served an answer on behalf of itself and the New York City Police Department on or about June 9, 2014. By two motions, the City now moves for summary judgment (Motion Seq. 002) and to dismiss the complaint against the individual defendants (Motion Seq. 003). Plaintiff opposes both motions.

## DISCUSSION

### A. Standard of Review

A motion for summary judgment "shall be granted if, upon all the papers and proofs submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of any party" (CPLR § 3212[b]). "The proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in

**152841/2014  VASQUEZ, XAVIER vs. CITY OF NEW YORK**
**Motion No.  002 003**

**Page 3 of 12**

3 of 12

dispute, and that it is entitled to judgment as a matter of law" (*Dallas-Stephenson v Waisman*, 39 AD3d 303, 306 [1st Dept 2007]). The movant's burden is "heavy," and "on a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party" (*William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh*, 22 NY3d 470, 475 [2013][internal quotation marks and citation omitted]). Upon a proffer of evidence establishing a *prima facie* case by the movant, the party opposing a motion for summary judgment bears the burden of producing evidentiary proof in admissible form sufficient to require a trial of material questions of fact (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). "A motion for summary judgment should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility" (*Ruiz v Griffin*, 71 AD3d 1112, 1115 [2d Dept 2010][internal quotation marks and citation omitted]).

Where a defendant moves to dismiss pursuant to CPLR § 3211(a)(7), the court must "accept the facts as alleged in the complaint as true, accord the plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994][citations omitted]). Ambiguous allegations must be resolved in the plaintiff's favor (*see JF Capital Advisors, LLC v Lightstone Group, LLC*, 25 NY3d 759, 764 [2015]). "The motion must be denied if from the pleadings' four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law" (*511 West 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 152 [2002][internal citations omitted]). "However, when evidence is submitted on a motion to dismiss, we look to whether plaintiff has a cause of action, rather than whether it is pleaded" (*Braun v Lewis*, 99 AD3d 574 [1st Dept 2012]; citing *Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]).

### B. Motion Sequence 002

In Motion Seq. 002, the City moves for summary judgment (1) to dismiss Plaintiff's False Arrest and Imprisonment, Respondent Superior, Negligent Training and Supervision, and Negligent Review claims for failing to file a timely notice of claim, (2) to dismiss Plaintiff's negligence-based claims as time-barred, (3) for summary judgment because there was probable cause for Plaintiff's arrest and prosecution, (4) to dismiss Plaintiff's claims under 42 U.S.C. 1983, (5) to dismiss the complaint as against the NYPD as an improper party because it is not a suable entity.

As a threshold matter, Plaintiff argues that the motion should be denied as untimely because the case scheduling order entered on May 7, 2018 provides that motions for summary judgment "[s]hall be filed no later than 60 days after filing of the Note of Issue unless otherwise directed by the court" (NYSCEF Doc No. 9). However, the court's part rules in effect when the Plaintiff filed the Note of Issue on May 24, 2023, directed that "[a]ll summary judgment motions must be filed no later than 120 days after filing the Note of Issue" (NYSCEF Doc No. 71). Under these circumstances, the court's part rules supersede the case scheduling order. Because Plaintiff filed the Note of Issue on May 24, 2023 (NYSCEF Doc No. 57), the deadline to file motions for summary judgment was 120 days later, on September 21, 2023. Therefore, defendants' motion filed on September 19, 2023 was timely.

**152841/2014   VASQUEZ, XAVIER vs. CITY OF NEW YORK**                          **Page 4 of 12**
**Motion No.  002 003**

[* 4]                                                   4 of 12

Additionally, the City's motion to dismiss the complaint as against the NYPD is granted because the NYPD is a non-suable entity pursuant to Chapter 17, section 396 of the New York City Charter (*Troy v City of New York*, 160 AD3d 410, 411 [1st Dept 2018]).

### a. False Arrest and False Imprisonment

Plaintiff's second cause of action interposes a claim for false arrest and false imprisonment under federal law, while the fourth cause of action interposes a claim for false arrest under state law.[1] The City moves to dismiss both causes of action on the grounds that they are time-barred and because there was probable cause for Plaintiff's arrest. Plaintiff contends that his federal false arrest and false imprisonment claims are timely and there was not probable cause to arrest Plaintiff. Plaintiff argues, *inter alia*, that there was not probable cause for his arrest because his DNA did not match that obtained from the first attack, the cell phone records and video surveillance acquired by the police did not implicate him, and because the victim did not identify him in a lineup or photo array.

Pursuant to General Municipal Law ("GML") § 50-i, no tort action or special proceeding shall be prosecuted against the City absent timely service of a notice of claim (General Municipal Law § 50-i[1]). The notice of claim must be filed within 90 days after the claim accrues (General Municipal Law § 50-e[1][a]). A timely notice of claim is a condition precedent to the commencement of any tort action and the statute of limitations is one year and ninety days for all such claims, including false arrest (General Municipal Law § 50-i[1]; CPLR § 217-a; *Campbell v City of New York*, 4 NY3d 200, 203 [1st Dept 2005]["This Court has consistently treated the year–and–90–day provision contained in section 50–i as a statute of limitations"]). New York common law claims for false arrest and imprisonment accrue on the date the plaintiff is released from custody (*McQueen v City of New York*, 209 AD3d 469, 470 [1st Dept 2022]). Any application to file a late or amended notice of claim must be made within the appliable statute of limitations period (*Pierson v New York*, 56 NY2d 950, 955-956 [1982]; *Guzman v City of New York*, 190 AD3d 454, 455 [1st Dept 2021]; *Beauvoir v City of New York*, 176 AD3d 437, 437 ["the one–year–and–90–day statute of limitations is a bar to all the state claims . . . we lack any discretion to allow expired claims to proceed thereafter" [1st Dept 2019]).

Here, Plaintiff was released from custody on December 31, 2012, and, therefore, the deadline to file the notice of claim was March 31, 2013. As such, the notice of claim filed on April 25, 2013 was untimely. Whereas the statute of limitation has now long past, the court lacks any discretion to allow a late notice of claim or otherwise allow the expired claim to proceed (*Beauvoir*, 176 AD3d at 437, *supra*). The notice of claim requirement cannot, as Plaintiff suggests, be waived or precluded (*id.*). Accordingly, the state law cause of action for false arrest is untimely and must be dismissed. Notably, the notice of claim requirements are not applicable to federal law claims (*Wanczowski v City of New York*, 186 AD2d 397, 397 [1st Dept 1992], citing *Felder v Casey*, 487 US 131 [1988]). False arrest and false imprisonment claims brought pursuant to 42 USC § 1983 accrue "once the victim becomes held pursuant to [legal] process – when, for example, he is bound over by a magistrate or arraigned on charges" (*id.*). The statute of limitations for the false arrest

---

[1] "In New York, the tort of false arrest is synonymous with that of false imprisonment" (*Posr v Doherty*, 944 F2d 91, 96 [2d Cir 1991]).

**152841/2014   VASQUEZ, XAVIER vs. CITY OF NEW YORK**
**Motion No.  002 003**

**Page 5 of 12**

claims under 42 U.S.C. § 1983 is three years (*id.*). Therefore, Plaintiff's federal false arrest claim is timely.

The elements of false arrest are "substantially the same" under state and federal law and require the same analysis (*Crooks v City of New York*, 189 AD3d 771, 771 [2d Dept 2020]). "Under the common law, a plaintiff may bring suit for false arrest and imprisonment against one who has unlawfully robbed the plaintiff of [their] 'freedom from restraint of movement'" (*De Lourdes Torres v Jones*, 26 NY3d 742, 759 [2016], quoting *Broughton v State of New York*, 37 NY2d 451, 456 [1975], *cert denied sub nom. Schanbarger v Kellogg*, 423 US 929 [1975][other citation omitted]). To prevail on a cause of action for false arrest or imprisonment, a plaintiff must demonstrate (1) that the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not privileged (*De Lourdes Torres*, 26 NY3d 742, 759 [2016]). "For purposes of the privilege element of a false arrest and imprisonment claim, an act of confinement is privileged if it stems from a lawful arrest supported by probable cause" (*De Lourdes Torres*, 26 NY3d at 759 [citations omitted]; *Diop v City of New York*, 50 FSupp3d 411, 418 [SDNY 2014]["Because the existence of probable cause makes a confinement privileged, it is "a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983"]).

"Probable cause exists when an arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime" (*Weyant v Okst*, 101 F3d 845, 852 [2d Cir 1996]). "The test for probable cause is an objective one and "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest" (*Diop*, 50 FSupp3d at 419). "Whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the arresting officers" (*id.*, citing *Weyant*, 101 F3d at 852). "Even if facts are disputed, a defendant may still be entitled to summary judgment on a § 1983 false arrest claim if the plaintiff's version of events establishes the existence of probable cause to arrest" (*Bonds v City of New York*, 2014 WL 2440542, *4 [EDNY, May 30, 2014, No. 12-CV-1772 (ARR/MDG)]).

Considering the totality of the circumstances and information known the NYPD at the time of Plaintiff's arrest, it is the conclusion of this court that the NYPD had probable cause to arrest Plaintiff. Plaintiff matched the victim's description of the perpetrator (NYSCEF Doc No. 72, police report at 103), and his DNA was found on the victim's neck after she told the police officers that the rapist had had kissed her on the neck during the attack (NYSCEF Doc No. 72, police report at 83; Statement of Material Facts ¶ 9). The victim also told the police that she had been with her family with no contact to any other males for a week prior to the attack, so they had no reason to suspect there was a second man present on the night of the attack (NYSCEF Doc No. 72, police report at 83, 103). When questioned by the police, Plaintiff provided a fake name and denied knowledge of the victim, despite the DNA match that placed him at her home (Response to Statement of Material Facts ¶ 14; NYSCEF Doc No. 116). He offered no explanation regarding why he was in her home or how his DNA came to be on her neck on the night of the attack (*id.*). Under these circumstances, it was reasonable for them to conclude that Plaintiff was the perpetrator and the NYPD had probable cause to arrest Plaintiff (*see Santos v City of New York*, 161 AD3d

**152841/2014   VASQUEZ, XAVIER vs. CITY OF NEW YORK**
**Motion No.  002 003**

**Page 6 of 12**

6 of 12

509, 509 [1st Dept 2018]; *Thompson v City of New York*, 2 FSupp 3d 374 [EDNY 2014], *affd*, 592 F Appx 36 [2d Cir 2015]).

"Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest" (*Ricciuti v N.Y.C. Transit Authority*, 124 F3d 123, 128 [2d Cir 1997]). Although there was evidence uncovered in the investigation that did not implicate Plaintiff, none of the evidence available prior to his arrest was exculpatory (*see People v Valles*, 62 NY2d 36, 38 [1984]; *Celestin v City of New York*, 581 FSupp2d 420, 432 [EDNY 2008]), and did not negate probable cause (*id.*; *see also Harig v City of Buffalo*, 2023 WL 3579367 [2d Cir, May 22, 2023, No. 22-30-CV]). The victim did not identify Plaintiff in a lineup or photo array, but she also did not identify any other viable suspects.[2] Although Plaintiff's DNA did not match the first attack, the victim could have been mistaken regarding the identity of the first perpetrator, and it was not unreasonable for the NYPD to rely on the DNA evidence that placed the Plaintiff at the scene of the second assault. "[P]robable cause does not require absolute certainty" (*Panetta v Crowley*, 460 F3d 388, 395 [2d Cir 2006]). It is a "fluid concept--turning on the assessment of probabilities in particular facts" (*id.*). Notably, the day that the OCME reported his DNA did not match the sample taken from the second assault, Plaintiff was released from confinement and the ADA subsequently moved to dismiss the charges against him. The court acknowledges that Plaintiff's confinement was undoubtedly a painful and difficult experience for him, and the delays experienced in his criminal case were an unfortunate byproduct of an imperfect criminal justice system, but the arrest was nonetheless privileged. Therefore, the state false arrest claim is dismissed as untimely and privileged, and the federal false arrest cause of action is dismissed as privileged.

### b. Malicious Prosecution

The City contends that Plaintiff has not pled a cause of action for malicious prosecution, but nevertheless seeks to dismiss the cause of action to the extent that one is pled. At oral argument, Plaintiff's counsel advised the court that Plaintiff intended to interpose a cause of action for malicious prosecution by virtue of the first cause of action and made an oral application for leave to amend to correct any pleading deficiencies. Plaintiff's first cause of action alleges, *inter alia*, that the defendants "acted with actual malice toward Plaintiff and with willful wanton indifference to and deliberate disregard for the statutory and constitutional rights of the Plaintiff," which actions "constituted unreasonable deprivation of liberty without due process of law" (NYSCEF Doc No. 1, complaint ¶¶ 45-46). Under New York law, a complaint must be "sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action" (CPLR § 3013). Pleadings must be liberally construed and even a poorly drafted complaint will not be dismissed if the "facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994][citations omitted]). Pursuant to CPLR Rule 3025, a party may amend or supplement their pleading "at any time by leave of court or by stipulation of all parties" (CPLR 3025 [a]). "Leave shall be freely given upon such terms as may be just" (*id.*). "[I]n the absence of

---

[2] Plaintiff suggests that Michael Pena, a former NYPD officer who was arrested and convicted for a number of rapes, may be the perpetrator of both assaults on the victim, but the record indicates that the NYPD investigated Pena and eliminated him as a suspect (NYSCEF Doc No. 6, Det. Rama deposition Transcript at 80, 86). Notably, the victim also did not pick Pena from a photo array (NYSCEF Doc No. 72, police report at 83, 187).

152841/2014 VASQUEZ, XAVIER vs. CITY OF NEW YORK
Motion No. 002 003

Page 7 of 12

prejudice or surprise resulting directly from the delay in seeking leave, applications to amend are to be freely granted unless the proposed amendment is palpably insufficient or patently devoid of merit" (*Favourite Ltd. v Cico*, 208 AD3d 99, 108 [1st Dept 2022]). Thus, Plaintiff's oral application to amend may only be granted upon a showing that Plaintiff has a cognizable claim for malicious prosecution.[3]

To recover damages for malicious prosecution under state law, a plaintiff must establish (1) that a criminal proceeding was initiated against them, (2) it terminated favorably to plaintiff, (3) lacked of probable cause, and (4) was brought out of actual malice (*Morant v City of New York*, 95 AD 3d 612 [1st Dept 2012], quoting *Colon v City of New York*, 60 NY2d 78, 82 [1983]; *Martinez v City of Schenectady*, 97 NY2d 78, 84 [2001]). To prevail on a federal claim brought under 42 U.S.C. § 1983, a plaintiff must show a violation of their rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law (*Manganiello v City of New York*, 612 F3d 149, 161 [2d Cir 2010]). The existence of probable cause for the prosecution constitutes a complete defense to a claim of malicious prosecution (*Lawson v City of New York*, 83 AD 3d 609 [1st Dept 2011]).

For the purposes of a malicious prosecution claim, a Grand Jury indictment creates a presumption of probable cause for the criminal proceeding (*Colon v City of New York*, 60 NY2d 78, 82 [1983]). This rule is "founded upon the premise that the Grand Jury acts judicially and it may be presumed that it has acted regularly" (*id.*). The complaint must allege specific facts to overcome the presumption (*id.*; *see also McQueen v City of New York*, 209 AD3d 469, 470-471 [1st Dept 2022]["Where there is an indictment, there is a presumption of probable cause and the complaint must therefore allege specific facts to overcome the effect of the indictment"][internal citations and quotations omitted]). New York law does not "permit the presumption to be overcome by any evidence tending to show the absence of probable cause," and "the trial court may not weigh the evidence upon which the police acted or which was before the Grand Jury after the indictment has issued" (*Colon*, 60 NY2d 78 at 83). Rather, to succeed on a cause of action for malicious prosecution after an indictment, a plaintiff "must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith" (*id.*). Plaintiff alleges that the police "ignored" evidence that he was not the perpetrator, but there is no evidence in the record that indicates the police withheld information from the District Attorneys or engaged in any other improprieties in connection with the indictment. This is insufficient to overcome the presumption of probable cause for the criminal proceeding.

"Moreover, even if a plaintiff rebuts the presumption of probable cause, he or she still must establish as a jury issue that the defendant acted with malice, i.e., that the defendant must have

---

[3] Assuming *arguendo*, that the first cause of action pleads a viable cause of action for malicious prosecution, such claim would be timely. The statute of limitations for a state law cause of action for malicious prosecution against the City accrues upon favorable termination of the underlying criminal proceeding and runs for one year and 90 days accrued (General Municipal Law § 50-i[1][c]; CPLR § 217-a). The underlying criminal proceeding was dismissed on April 11, 2013, he filed his notice of claim on April 25, 2013, and commenced this action on March 26, 2014, which satisfies the notice of claim requirement and is timely. Federal claims are not subject to the notice of claim requirement (*Felder v Casey*, 487 US 131 [1988]; *Wanczowski v City of New York*, 186 AD2d 397, 397 [1st Dept 1992][compliance with notice of claim requirements is not a prerequisite to recovery for violation of civil rights based on 42 U.S.C. § 1983]).

**152841/2014  VASQUEZ, XAVIER vs. CITY OF NEW YORK**
**Motion No.  002 003**

[* 8]

commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served" (*Roberts v City of New York,* 171 AD3d 139, 150 [1st Dept], *affd,* 34 NY3d 991 [2019]; *see also Manganiello v City of New York,* 612 F3d at 163]["Malice may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff."]). Plaintiff also does not make any factual allegations that the officers acted with malice, nor does the record support a finding that the police acted with malice (*McQueen,* 209 AD3d at 471 ["Because the complaint only conclusory alleges that the prosecution of plaintiff was commenced and maintained with malice, it fails to state a claim for malicious prosecution"]).

### c.  *Respondeat Superior*

Plaintiff's fifth cause of action seeks relief from the City and the NYPD under the theory of *respondeat superior*. The City moves to dismiss the cause of action on the grounds that it is a "negligence-based claim" that is time barred under General Municipal Law § 50-i(1). The City contends that the cause of action accrued on the date of arrest, October 27, 2011, and the statute of limitations expired on January 25, 2013, approximately two months prior to commencement of the action on March 26, 2014. Plaintiff responds simply that the fifth cause of action "is not a negligence claim" and asserts it is timely, but offers no further information. Substantively, the complaint alleges only that "[a]t all times pertinent hereto, DOE was acting within the scope of his employment as an officer of the New York Police Department and the City of New York," and "[t]he City of New York and New York City Police Department are each liable for compensatory damages under the doctrine of *respondeat superior* for the intentional torts that DOE committed within the scope of his employment" (NYSCEF Doc No. 1, complaint ¶¶ 64-65). No "Doe" defendants have been identified or added as parties to the action.

The statute of limitations for Plaintiff's fifth cause of action under a theory of *respondeat superior* under state law is one year and ninety days from the date of arrest for the false arrest claim and from the date of favorable resolution of the criminal proceeding for malicious prosecution (General Municipal Law § 50-e, 50-i).[4] Therefore, the state law cause of action is untimely as a matter of law. To the extent that Plaintiff seeks to pursue the fifth cause of action as a federal claim under 42 U.S.C. § 1983, "a municipality is not liable under 42 USC § 1983 for an injury inflicted solely by its employees or agents . . . or solely upon the doctrine of *respondeat superior* or vicarious liability (*Holland,* 90 AD3d at 847, *supra*). Thus, the City is entitled to summary judgment dismissing the fifth cause of action.

### d.  *Monell* and 42 U.S.C. § 1983

Although not explicitly pled as such, Plaintiff asserts that the sixth and seventh causes of action are "substantively" *Monell* claims under 42 U.S.C. § 1983 (NYSCEF Doc No. 87, Gorman aff in opposition ¶ 67). The sixth cause of action alleges that the City and NYPD's "failure to provide adequate training and supervision to its police officers constitutes a willful and wanton indifference and deliberate disregard for human life and the rights of private citizens, including Plaintiff" (NYSCEF Doc No. 1, complaint ¶ 67). The seventh cause of action alleges that the City

---

[4] The court interprets the reference to "intentional torts" in the fifth cause of action to mean false arrest and malicious prosecution—the only intentional torts alleged in the complaint.

**152841/2014   VASQUEZ, XAVIER vs. CITY OF NEW YORK**                                    **Page 9 of 12**
**Motion No.  002 003**

9 of 12

and the NYPD "maintained a system of review of police conduct which was so untimely and cursory that it was ineffective and permitted and tolerated the unreasonable detention of Plaintiff" and the "wonton indifference to and deliberate disregard for the statutory and constitutional rights of Plaintiff" (*id.* ¶¶ 69-70).

Under 42 U.S.C. § 1983, local governments are only responsible for "their *own* illegal acts" (*Connick v Thompson*, 563 US 51, 60 [2011]). Liability may only be imposed on the City for its own alleged violations of a plaintiff's constitutional rights by establishing a direct causal link between a municipal policy or custom and the alleged constitutional deprivation" (*Holland*, 90 AD3d at 847, citing *Canton v Harris*, 489 US 378, 385 [1989]; *Connick*, 563 US 51 [2011]; *Monell v New York City Dept. of Social Servs.*, 436 US 658, 694 [1978]). To satisfy the official policy or custom element, a plaintiff may allege the existence of "(1) a formal policy, (2) action taken or decisions made by policymakers that caused the violation of plaintiff's rights, (3) a practice so persistent and widespread that it constitutes a 'custom or usage,' or (4) a failure to properly train or supervise municipal employees" (*Boddie v City of New York*, 2016 WL 1466555, *4 [SDNY April 13, 2016, No. 1:15-CV-4275-GHW], citing *Moray v City of Yonkers*, 924 FSupp 8, 12 [SDNY 1996]; *see also Holland*, 90 AD3d at 847, *supra* ["The plaintiff must show that the action that is alleged to be unconstitutional either implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers or has occurred pursuant to a practice so permanent and well settled as to constitute a custom or usage with the force of law"][internal quote omitted]).

The sixth and seventh causes of action apparently fall under the fourth category, failure to train or supervise. Under limited circumstances, proof of a municipality's failure to train or supervise may be the basis for liability under § 1983 (*Holland*, 90 AD3d at 848, *supra*). "However, only where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983" (*id.* [internal quotes omitted]; *see also Felix v City of New York*, 344 FSupp3d 644, 653 [SDNY 2018]). "To allege deliberate indifference in the context of a failure-to-train claim, a plaintiff must plead facts giving rise to a plausible inference that (1) the municipality knows 'to a moral certainty' that its employees will confront a given situation, (2) either the situation presents the employees with a difficult choice of the sort that training will make less difficult, or there is a history of employees mishandling the situation, and (3) the wrong choice by the employee will frequently cause a constitutional deprivation" (*Boddie*, 2016 WL 1466555, *4; *see also Holland*, 90 AD3d at 847, *supra*). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train" (*Boddie*, 2016 WL 1466555 at *4, *supra*). To establish liability under a theory of failure to train, a plaintiff must "identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation" (*Amnesty Am. v Town of W. Hartford*, 361 F3d 113, 130 [2d Cir 2004][internal quotes omitted], citing *City of Canton*, 489 US 378, 390-391 [1989]). "The elements of an identified training deficiency and a close causal relationship, which together require the plaintiffs to prove that the deprivation occurred as the result of a municipal policy rather than as a result of isolated misconduct by a single actor, ensure that a failure to train theory does not collapse into *respondeat superior* liability" (*id.*).

**152841/2014   VASQUEZ, XAVIER vs. CITY OF NEW YORK**
**Motion No.  002 003**

Page 10 of 12

10 of 12

The conclusory allegations set forth in Plaintiff's sixth and seventh causes of action are insufficient to state a cause of action for failure to train or supervise (*see Felix v City of New York*, 344 FSupp3d 644, 653 [SDNY 2018]["boilerplate assertions of municipal policy are insufficient to state a claim for *Monell* liability . . . [f]acts supporting the policy's existence must be pled"]). Plaintiff does not identify any specific polices, regulations, or deficiencies in the NYPD training (*see Felix v City of New York*, 344 FSupp3d 644, 663 [SDNY 2018]["Courts have rejected failure to train claims as conclusory when they fail to identify any specific policies, regulations, or deficiencies in training, or to allege a series of other incidents"][internal quotes omitted]). Nor is there any showing that the alleged deficiencies "reflect a deliberate choice among various alternatives, rather than negligence or bureaucratic inaction" (*Felix*, 344 FSupp3d at 663, *supra*). No pattern of similar constitutional violations or other facts to show deliberate indifference are alleged, and Plaintiff does not plead a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. Considering these deficiencies, the motion for is granted with respect to the *Monell* claims, and the sixth and seventh causes of action are dismissed.

Plaintiff's third cause of action also purports to allege a cause of action under 42 U.S.C. 1983 for conspiracy to violate Plaintiff's civil rights, but fails to state any factual allegations that manifest any cause of action cognizable at law. The third cause of action is, therefore, also dismissed for failure to statute a cause of action upon which relief may be granted.

### C. Motion Sequence 003

In Motion Seq. 003, the City moves to dismiss the action against the individual defendants for lack of personal jurisdiction due to lack of service of process. Plaintiff opposes and submits an affirmation of Jason Steinberger, Esq. ("Mr. Steinberger"), who previously represented Plaintiff in this action and drafted and filed the complaint, in support of the opposition. Mr. Steinberger attests that he "arranged for service to be made with Olympic Process, located at 895 Sheridan Avenue, Bronx NY 10451 on or about March 26, 2014" (NYSCEF Doc No. 94, Steinberger aff ¶ 7). He further attests that, "I no longer have the affidavits of service because they were destroyed when my home office was flooded on or about January 4, 2015" (*id*. ¶ 9). No date, time, location, or method of the purported service is offered. Plaintiff's current counsel surmises that "based on the timeline of events," the date of service "would have been between March 26, 2014 and January 4, 2015" (Gorman aff in opposition ¶ 17). Plaintiff also contends that the motion is untimely because the City did not move within 60 days of service of its answer and that the motion should be denied for good cause because the individual defendants actively participated in the litigation by the City's appearance and Detective Rama sitting for a deposition.

"On a motion to dismiss pursuant to CPLR § 3211 (a) (8), the plaintiff has the burden of presenting sufficient evidence, through affidavits and relevant documents, to demonstrate jurisdiction" (*Coast to Coast Energy, Inc. v Gasarch*, 149 AD3d 485, 486 [1st Dept 2017]). Service of process is a constitutional predicate of personal jurisdiction which implicates the due process requirements of notice and opportunity to be heard (*Keane v Kamin*, 94 NY2d 263, 265 [1999]). The statutory notice provisions set forth in the CPLR must be strictly construed and "[n]otice received by means other than those authorized by statute does not bring a defendant within the jurisdiction of the court" (*Macchia v Russo*, 67 NY2d 592, 595 [1986]). "When the requirements for service of process have not been met, it is irrelevant that defendant may have actually received

**152841/2014 VASQUEZ, XAVIER vs. CITY OF NEW YORK**
**Motion No. 002 003**

**Page 11 of 12**

11 of 12

the documents" (*Raschel v Rish*, 69 NY2d 694, 697 [1986]). Here, Plaintiff has failed to present any evidence of service of process upon the individual defendants. No affidavits of service were filed or offered in opposition to the motion, and the affirmation of Mr. Steinberger, which lacks any detail regarding when, where, or by what manner any of the personal defendants was served with process, is entirely insufficient to demonstrate service of process sufficient to establish personal jurisdiction over the defendants. In the absence of evidence of personal jurisdiction over the individual defendants, the complaint must be dismissed against them.[5] Therefore, the motion is granted.

Accordingly, it is

ORDERED that defendant the City of New York's motion to dismiss the complaint as against the individual defendants for lack of personal jurisdiction (Motion Seq. 003) is granted, and the complaint is dismissed as against the individual defendants; and it is further

ORDERED that defendant the City of New York's motion for summary judgment (Motion Seq. 002) is granted and the complaint is dismissed with costs and disbursements to defendant as taxed by the Clerk upon the submission of an appropriate bill of costs; and it is further

ORDERED that the Clerk is directed to enter judgment accordingly.

| | |
|---|---|
| **4/30/2024** | |
| **DATE** | **HASA A. KINGO, J.S.C.** |

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

---

[5] The City also moves to dismiss for failure to move for a default judgment within one year of default pursuant to CPLR § 3215(c). However, in the absence of proof of service, there is no evidence that the defendants were in default or that the time to move for a default judgment had begun (*First Fed. Sav. & Loan Ass'n of Charleston v Tezzi*, 164 AD3d at 760 ["Since service was never completed, the defendant's time to answer the complaint had not yet started to run and, therefore, she could not be in default"]).

152841/2014   VASQUEZ, XAVIER vs. CITY OF NEW YORK
Motion No.  002 003

Page 12 of 12